## STATE ex CHRISTIAN v BARRY

Ohio Appeals, 8th Dist; Cuyahoga Co
Decided June 30, 1930

Anderson & Lamb, Cleveland, for State ex.

Harold H. Burton, Director of Law and Francis Douglass, Assistant Director of Law, Cleveland, for Barry.

VICKERY, PJ.

The purpose of this rule was manifest and made necessary by the frequent usurpation or perhaps the using of power of policemen to compel, whether justly or unjustly, settlements of claims that they asserted against certain individuals. The practice had become of such frequency that it had become an abuse in the department in that policemen who had been injured, or fancied they had been injured, by their automobiles or motorcycles coming in contact with others, had compelled, by the mere fact that they were officers, a settlement when in many cases the police officers were to blame, for the other party, standing in awe or not wanting any controversy with the police department, settled and was compelled to settle, or he thought he was, by the strong arm method used by the police who claimed to have been damaged or injured, or their property damaged or injured, by the other party.

It must be admitted that the rule, as far as it attempted to curb this sort of unjust practice on the part of the police, was a salutary rule and was promulgated by the chief of police and adopted by the director of public service as a rule of the department which henceforth should govern all members of the police department.

It seems that subsequent to that time the

relator on his motorcycle came in contact with a bus owned by the Cleveland Railway Company and, without obtaining permission from the department, attempted to force a settlement of a claim that he made against the railway cmopany by bringing an action in court. The statement of claim and the pleadings show that no permission was asked or obtained by the relator before bringing that action, but he brought it in direct violation of the order and in spite of the order, with the idea that must have been in his mind he intended to violate such orders.

He was promptly suspended from duties by the chief of police for violation of Rule No. 915 and other infractions of the rules, for he seemed to be of a rather recalcitrant nature, and the matter was certified to Director of Service Barry who held a hearing of the matter, and after such hearing discharged the policeman from further duties for violation of the rule. Whereupon the relator appealed, as he had the right to do, to the Civil Service Commission which was composed of Harry K. Davis, David Jones and George Green. They, after hearing the testimony and becoming conversant with the whole matter, sustained the finding of the judgment of the Chief of Police and Director Barry and refused to reinstate the relator and confirmed the judgment.

Whereupon the relator brought this suit in mandamus to compel his re-instatement, asserting that he had been deprived of his constitutional right, as an American citizen, of maintaining and bringing an action for the redress of his grievance in the courts of the land.

It is urged that in thus depriving him of his constitutional rights, the director of public service and the civil service commission were wrong and violated the Constitution of the state of Ohio and the Constitution of the United States. This seems to be the main contention upon which the relator seeks to maintain his action.

The slightest examination of the record and the most casual reading of the rule will show that it had no such drastic effect. In order to maintain discipline and order in the police department, which is akin to a military organization, the orders of superiors and rules made by them must be obeyed by their inferiors, and if they are not obeyed and can be frowned upon and violated at will by the inferior officers, goodby to all discipline and order in the police department. Now and then there gets attached to every organization, military or semi-military, a person who resents authority and is constantly running up against the rules and oftentimes willfully violating the rule because, forsooth, he imagines he has been deprived of some of his rights.

Well, in a measure he has been deprived of some of his rights, but in order to make a military organization effective, rules must be obeyed, and if a subordinate could ignore the command of his superior and violate with impunity any orders that are issued, no matter how immaterial those orders may seem to be to the subordinate, it would be subversive of the best interests of the organization; and so, when a man joins an organization of that character, he agrees to and does give up some of the rights that an ordinary citizen might claim to exist in his favor. This rule was made to have a certain effect, and instead of depriving a party of his right to maintain a legitimate suit, it provided only that he should not bring such a suit or compel a settlement, or put in the hands of a lawyer for settlement, any claim that he might have, without first asking for and getting permission from the authorities.

Now it is hard to conceive that, if a man had a just claim against a party who had injured him, a request to his superior to maintain such a suit could or would be refused. What harm is there done to the individual policeman, if he is worthy of the trust of being employed by the public, if he is worthy of being enrolled as a policemen in a force of twelve or fifteen hundred that are under discipline and command of their superior officers—I say, what harm could there come to him, what loss of dignity, if you please, could come to him, if he should be compelled to first ask for permission to bring a suit; and if there was a legitimate claim and permission was refused, there would be ample time for him to complain, and I have no doubt that in that event if he went on and brought his suit and his superior officers were seeking to remove him from office because of that, he would have his remedy in the courts to prevent any such drastic action. But until he has done everything that he could do and should have done, this court can only assume that he really had no claim, that he was making a fictitious claim against the Cleveland Railway Company, and by reason of his being a police officer attempting to compel a settlement of such a claim and that he did this in direct violation of the rule that was promulgated to prevent

such a practice.

We cannot assume that a man as square and equitable as Chief Graul, and as honorable and fair in governing the police force as the director of public service, and especially the civil service commission composed of three reputable and distinguished men who have long served in this capacity—I say, we cannot assume that all these men would utterly ignore the rights of the relator and hold him guilty and remove him from office unless there was just cause for it.

The rule being a salutary rule, being promulgated in the presence of and with the knowledge of the relator, the relator had just one duty to perform in relation to it as a subordinate officer in the organization which is in its nature military, and that was to obey his superior officers. Any other doctrine, any other action upon the part of the subordinate, would be subversive of the entire discipline of the department, for if one rule could with impunity be ignored and disobeyed, so could others, and the police force would be a conglomeration of men without any nexus that bound them together, recognizing no authority but their own wanton desires and will.

After going over the whole record and hearing the argument of counsel and the very able briefs presented by the relator's counsel and by the city law department, we can come to no other conclusion than that, as drastic as the measure seems to be, the policeman who was discharged for violating the rule is not entitled to a writ of mandamus. He seems to be of a nature not willing to submit to rules and discipline, and if that be so, he cannot be a fit man for the department, for as already stated men of the department must be ready and willing to obey the orders of their superiors.

It is said in this case that he did ask for permission and was refused. The record does not bear this out. It seems from the record that requests were made but were returned to the relator because of their insufficiency, and after that the matter does not seem to have been pressed. Then there was no request nor refusal.

We say again we cannot conceive of Mr. Graul refusing a request, if a policeman were injured and had a meritorious claim, that an action might be brought to maintain such a claim.

The matter really was heard in this court on a motion by Mr. Anderson, counsel for the relator, for a judgment upon the pleadings and statement of facts. Of course, from what we have said the only thing to do is to overrule this motion. The motion, therefore, will be overruled and a writ of mandamus refused for, taking the whole record together we cannot see how this writ can be issued, and the majority of the court, therefore, refuses the granting of the writ.

Sullivan, J, concurs.
Levine, J, dissents.